**RICHMOND BLACK POLICE OFFICERS ASSOCIATION et al.**

v.

**The CITY OF RICHMOND et al.**

**Civ. A. No. 74–0267–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 18, 1974.

James R. Saul, Asst. City Atty., Richmond, Va., for defendants.

Edward D. Barnes, Richmond, Va., for intervening defendants.

## MEMORANDUM

WARRINER, District Judge.

This matter comes before the Court pursuant to defendants' motion to dismiss plaintiffs' complaint on grounds which present three issues to this Court for resolution. Initially the defendants contend that this Court lacks jurisdiction over the subject matter of this suit; a civil rights action brought under 42 U.S.C. §§ 1981, 1983 and 1988 and the corresponding jurisdictional statute, 28 U.S.C. § 1343(3) and (4). The second contention is that the named plaintiffs, both individually and as representatives of the proposed class, lack proper standing to maintain this action. Thirdly, the defendants maintain that plaintiffs should be denied the right to proceed as a class action or, in the alternative, that the proposed class be constituted in conformity with Rule 23 of the Fed.R.Civ.P. The Court's resolution of the last two issues is necessarily interrelated and will be treated accordingly.

The defendants' first ground for dismissal is based upon the contention that the named defendants are not amenable to suit, either individually or in their official capacity, in actions brought under 42 U.S.C. §§ 1981, 1983 and 1988 for equitable and declaratory relief.[1] In support thereof defendants rely upon Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1970), together, as standing for the proposition that the City of Richmond is not a "person" within the meaning of 42 U.S.C. § 1983 and therefore is not susceptible to suit under that statute or 28 U.S.C. § 1343, the corresponding jurisdictional statute. The de-

---

1. The plaintiffs' demand for back pay under 42 U.S.C. § 1983 is considered as an equitable demand rather than a legal demand for damages. Robinson v. Lorillard, 444 F.2d 791 (4th Cir. 1971), cert. denied, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971).

fendants argue further that the defendants City Manager, Director of Public Safety, and Chief of Police are likewise immune from suit in their official capacities because, as municipal officials, they necessarily come under the penumbra protection afforded the City of Richmond by Kenosha; and, additionally, they are individually immune from suit because of the long standing common law immunity protecting persons carrying out their discretionary functions in public office. Contrawise, plaintiffs rely upon *Monroe, supra* as standing for the proposition that, under 42 U.S.C. § 1983, municipal corporations may be susceptible to suit for injunctive and declaratory relief. Similarly, plaintiffs rely upon Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) as dictating that in order to determine if there is, or is not, any validity to the asserted defense of common law immunity protecting the individual defendants there must be further fact finding. For the following reasons this Court must grant the defendants' motion to dismiss with respect to the City of Richmond and deny the same with respect to the City Manager, the Chief of Police, and the Director of Public Safety.

■ In Monroe v. Pape, *supra,* the Supreme Court held that a municipal corporation is not a "person" as contemplated under 42 U.S.C. § 1983 in actions where damages are sought. In City of Kenosha v. Bruno, *supra* the Court, upon examination of *Monroe,* concluded as follows:

> We find nothing in the legislative history discussed in Monroe, or in the language actually used by congress to suggest that the generic word "person" in [42 U.S.C.] § 1983 was intended to have a bifurcated applica-

tion to municipal corporations depending on the nature of relief sought against them. Since, as the Court held in *Monroe,* "Congress did not undertake to bring municipal corporations within the ambit of" § 1983, [*id*], at 187, [81 S.Ct. at 484,] they are outside of its ambit for purposes of equitable relief as well as for damages. *City of Kenosha,* 412 U.S. at 513, 93 S.Ct. at 2226.

In sum, a city is not a "person" under 42 U.S.C. § 1983 where equitable relief is sought, any more than it is where damages are sought.[2] Accordingly, this action must be dismissed with respect to the defendant City of Richmond.

■ While it would appear that a suit against the named City officials is essentially a suit against the City, and therefore barred by the doctrine of *Monroe* and *City of Kenosha,* such is not the law. The Court in *Monroe* held that municipal officials are susceptible to suit under 42 U.S.C. § 1983 for damage actions even though the municipality itself is immune. In *City of Kenosha* the Court neither included nor excluded municipal officials from the immunity granted to the municipality in actions for equitable relief arising under 42 U.S.C. § 1983. Absent an express statement by the Supreme Court of inclusion or exclusion, this Court is bound by the decision of Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973) holding that jurisdiction under 42 U.S.C. § 1983 does attach in suits for equitable relief against municipal officials in their official capacity. Accordingly, the defendants' motion on this ground to dismiss the complaint as against the City Manager, the Director of Public Safety, and the Chief of Police in their official capacities is not well founded.[3]

2. The City of Richmond's immunity to suit under 42 U.S.C. § 1983 is applicable to 42 U.S.C. §§ 1981 and 1988 also. *Cf.* Arunga v. Weldon, 469 F.2d 675 (9th Cir. 1972), holding that a city is not a "person" under the aegis of 42 U.S.C. §§ 1981, 1986; and Ries v. Lynskey, 452 F.2d 172 (7th Cir. 1971) holding, *inter alia,* that a city is not

susceptible to suit under 42 U.S.C. §§ 1983, 1986 and 1988.

3. In Taliaferro v. State Council of Higher Education, 372 F.Supp. 1378 (ED/Va 1974) the district court considered the implications of City of Kenosha v. Bruno, 412 U. S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Cleveland Board of Education v. LaFleur,

■■ Finally, defendants argue that the recognized common law immunity protecting persons carrying out their discretionary functions in public offices forbids any suit against the City Manager, the Director of Public Safety, and the Chief of Police. This argument reasons that as long as individuals are carrying out official duties embodying discretionary functions and there is no prima facie showing of bad faith, then they are immune to any court action against them arising out of the conduct of their official duties. In examining the common law immunity doctrine, however, courts have concluded that the rule, whatever its scope, is grounded on the inhibitory effect of suits for money damages only. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

> . . . The common law soon recognized the necessity of permitting officials to perform their official functions *free from the threat of suits for personal liability.* This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of *subjecting to liability* an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that *the threat of such liability* would deter his willingness to execute his office with the decisiveness and the judgment required by the public good. [Emphasis added] *Scheuer,* 416 U.S. at 239–240, 94 S.Ct. at 1688, 40 L.Ed. 2d at 98–99.

Actions for injunctive and declaratory relief, such as the one presently before the Court, do not possess that inhibitive effect and there is no need to guard against such suits. Accordingly, the doctrine of common law immunity does not protect the City Manager, the Director of Public Safety, and the Chief of Police from actions for injunctive relief to prevent what might otherwise be illegal acts on their parts. Sparrow v. Goodman, 502 F.2d 1326 (C.A. 4th Cir., 1974). It follows that defendants' motion to dismiss with respect to these defendants insofar as plaintiffs seek injunctive relief must be denied.

To resolve the second issue raised in the defendants' motion to dismiss this Court must examine the three plaintiffs to decide whether they have proper standing to maintain this action, either individually or as representatives of the proposed class. The three plaintiffs are as follows: (1) the Richmond Black Police Officers Association (hereinafter the "Association"), an unincorporated association, suing on its own behalf; (2) James W. Cheagle, a sergeant in the Richmond Bureau of Police, suing both in his individual capacity and as representative of the proposed class; and, (3) Willie C. Jones, another sergeant in the Richmond Bureau of Police, suing in his individual capacity and as representative of the proposed class. The Court will review the standing of these three plaintiffs accordingly.

With respect to the plaintiff Association, the Court finds that although this unincorporated association has the capacity to sue and be sued, it lacks the proper standing to maintain the instant action. Rule 17(b) of the Fed.R.Civ.P. directs that the capacity of an unincorporated association to sue or be sued shall be determined by the law of the state in which the U.S. District Court sits. Va.Code Ann. § 8–66 (1962) specifically confers upon an unincorporated association the capacity to sue or be sued. The fact that the Association has capacity to sue does not necessarily imply that it also has standing to maintain a particular action. Justice Brennan considered the standing requirement in

---

414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and Harper v. Kloster, 486 F.2d 1134 (4th Cir. 1973) and concluded that defendants in cases such as this may not be sued in their official capacities. We have considered these cases and must conclude that in Harper v. Kloster, *supra,* the Fourth Circuit held to the contrary.

Barlow v. Collins, 397 U.S. 159, 170, 90 S.Ct. 832, 840, 25 L.Ed.2d 192 (1969):

> [T]he "gist of the question of standing" is whether the party seeking relief has "alleged such a *personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." [Baker v. Carr, 368 U.S. 186, 204, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962).] "In other words," we said in *Flast* [v. Cohen, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1942)], "when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue" and *not whether the controversy is otherwise justiciable,* or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action invaded. [Emphasis added; footnotes omitted]

Plaintiffs rely upon N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L. Ed.2d 405 (1963) as standing for the proposition, *inter alia,* that in the area of alleged racial discrimination the federal courts have allowed organizational groups to be named parties in actions seeking to protect the rights of their members. Defendants, contrawise, argue that the Association itself has failed to allege the necessary "personal stake in the outcome of the controversy" required by Baker v. Carr, *supra.*

■ We agree with defendants that in the present action there is no allegation that the Association *itself* suffered either an injury in fact or a deprivation of any constitutionally protected right. The Association cannot base its cause of action on the alleged violation of rights that are personal to some or all of its members. An allegation that the members of the Association have been injured is not an allegation that the Association itself has been injured. Accordingly, the Association does not have the proper standing to maintain this suit on its own behalf.

Just as the Association has no standing to sue to protect its members, so also it has no standing to sue as a representative of the proposed class. The Court believes that plaintiffs' reliance on N. A. A. C. P. v. Button, *supra* is misplaced. In *Button,* the plaintiff organization was challenging the validity of a state statute which allegedly infringed directly on the right "of the N. A.A.C.P. and its members and lawyers to associate for the purpose of assisting persons who seek legal redress . . ." *Button,* 371 U.S. at 428, 83 S.Ct. at 335. There, the Court decided that the organization had standing to sue on behalf of its members because it was directly involved in those activities claimed to be constitutionally protected. In the instant action, the Court has already decided that the Association does not have proper standing to maintain a suit on its own behalf; and, in accordance with Judge Friendly's opinion in Aguayo v. Richardson, 473 F.2d 1090 (2nd Cir.) cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974) this Court now holds that an association does not have standing to represent the members of the association in a civil rights suit where there are alleged violations of the members' rights, but not the association's rights.[4] It follows that the Asso-

4. The plaintiff argues that the standing requirement should not be strictly construed in cases where fundamental rights are involved. He cites Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770 (8th Cir. 1966) for the proposition. *Smith* was a class action, represented by the Arkansas Teachers Association (ATA) for injunctive relief from alleged violations of the civil rights statutes. The Court in *Smith* permitted the ATA to represent the class despite the fact that the ATA was not itself, technically, an individual member of the class. The standing requirement was construed liberally for several reasons, *inter alia*: (1) the possible element of deterrence, through fear of reprisal, when one makes his own assertion of constitutional rights;

ciation does not have standing to represent the members of the proposed class and defendants' motion to dismiss must be granted with respect to this plaintiff.

■■ There are no factual distinctions between plaintiffs Cheagle and Jones. A single analysis of the standing issue relating to them will be sufficient. In order to have standing individually to assert constitutional issues these plaintiffs must allege facts which show that they have been injured as individuals. Colegrove v. Green, 328 U.S. 549, 66 S. Ct. 1198, 90 L.Ed. 1432 (1946). This Court, upon examination of the plaintiffs' complaint and accompanying affidavits, is satisfied that, taken together, these allegations show an "across the board" policy of discrimination which would necessarily adversely affect these plaintiffs in their present employment as members of the Richmond police force. It is well established that individuals have standing to sue for alleged violations of their constitutionally protected civil rights. See 42 U.S.C. § 1983 et seq. Both Cheagle and Jones have alleged individual injury in fact by claiming violations of their civil rights by reason of defendants' alleged discriminatory practices. Accordingly, these plaintiffs have standing to sue individually and defendants' motion to dismiss with respect to that issue must be denied.

A resolution of the question of whether Cheagle and Jones have proper standing to represent the proposed class necessarily encompasses an examination of the final issue: Is a class action proper in this case; and, if so, is the proposed class properly formed? The proposed class for the Court's consideration includes "all present Black employees of the Richmond Bureau of Police; all past Black employees of the Richmond Bureau of Police; all potential Black employees and applicants for employment with the Richmond Bureau of Police, past, present and future; and all Black persons residing in the City of Richmond entitled to police protection."

■■ Because this Court has granted the defendants' motion to dismiss the Association, plaintiffs Cheagle and Jones are the only remaining possible representatives of the proposed class. In order for a plaintiff to sue on behalf of a class he must be a member of the class which he purports to represent, Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); he must suffer the same injury as the other members of the class, Sierra Club v. Morton, 405 U. S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and he must be able fairly and adequately to represent them. For reasons which follow, the Court: (1) sustains defendants' motion to limit the class action with respect to the group of persons comprising "all Black persons residing in the City of Richmond entitled to police protection" and "all past Black employees and applicants for employment with the Richmond Bureau of Police"; (2) denies the defendants' motion to dismiss the status of the suit as a class action; and, (3) finally, denies defendants' motion to dismiss with respect to the claim that plaintiffs Cheagle and Jones lack proper standing to maintain this suit as class representatives.

The Court holds that the group of persons comprising "all Blacks in the City of Richmond entitled to police protection" should not be included in the proposed class. There exists no allegation in the plaintiffs' complaint that such persons have suffered any harm by reason of the defendants' alleged discriminatory practices. There is no allegation that Black persons in the City of Richmond do not receive adequate police

and, (2) the possibility that the individual will lose interest in the litigation if and when he obtains other employment.

The considerations swaying the Court in *Smith* are well founded; however, the present case does not present facts that necessitate a similar liberal evaluation of the standing requirement. In the instant case there are two additional individual plaintiffs who can, and are, willing to bear the burden of class representation. The fears of reprisals from and loss of interest in the litigation which persuaded the Court in *Smith* are not present here.

protection; and, absent a proper showing of harm in fact, these Black persons lack proper standing before this Court. However, even if there were such a showing, these persons would still be properly excluded from the proposed class because of a failure to satisfy the "commonality" prerequisite to class actions required by Rule 23(a)(2), Fed.R. Civ.P.[5] Questions of law and fact that relate to the adequacy of police protection are quite distinct from those relating to the promotion, hiring, placement, and the like, of Blacks within the Bureau of Police.

The group of persons comprising "all past Black employees and applicants for employment with the Richmond Bureau of Police" is also properly excluded from the proposed class for failure to satisfy the "fair and adequate representation" provision of Rule 23(a), Fed.R.Civ.P. Rule 23(a)(4) requires that the representative parties in a class action "fairly and adequately protect the interests of the class." Officers Cheagle and Jones, the only representative parties before the Court, are active members of the Richmond police force and, consequently, they are not truly representative of that group of persons who are past employees or past applicants for employment with the Richmond Bureau of Police. This Court is aware that there exists no legal requirement that representative parties include a member of that group of persons. Instead, the question of fair and adequate representation involves a matter of judicial discretion as dictated by the circumstances of each case. Schy v. Susquehanna Corp., 419 F.2d 1112 (7th Cir. 1970), cert. denied, 400 U.S. 826, 91 S. Ct. 51, 27 L.Ed.2d 55 (1970). In the present controversy the interest of all former employees and applicants for employment is very narrow when compared to the interests of the present employees. Any possible injunctive or declaratory relief the Court may order with respect to hiring, promotion, placement, and the like would naturally affect present and future employees of the Richmond Bureau of Police. Such relief would not affect the former employees or applicants since their interest must naturally be confined to the possible recovery of back pay. This Court, mindful of the narrow ancillary interest of former employees and applicants for employment and concerned with the fair and adequate protection of that interest, must limit the proposed class by excluding such persons. This exclusion is conditional and, upon proper showing that this group of persons satisfies the requirements of Rule 23(a), these past employees and applicants may be an appropriate subclass to the instant action.

With the exclusion of these groups of persons from the proposed class, the Court must now consider the remaining groups of potential class members to see if they satisfy the prerequisites of Rule 23(a), Fed.R.Civ.P. The plaintiffs' complaint and affidavit indicate that out of a total of 471 policemen in the Richmond Bureau of Police, 88 are Black. The complaint further alleges that these present employees have been injured on account of habitual discriminatory hiring and promotion practices on the part of the Richmond Bureau of Police.

Rule 23(a), Fed.R.Civ.P., dictates certain prerequisites (see footnote #5, *supra*) which must be satisfied before a class action can be maintained. With respect to the class itself Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable" and Rule 23(a)(2) requires that "there are questions of law or fact com-

---

5. Rule 23(a), Fed.R.Civ.P.: *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

mon to the class." These two requirements are more commonly referred to as the "numerosity" and "commonality" requirements. With respect to the requirement of numerosity the Court rules that 88 Black police officers, each alleging common questions of law or fact, are too numerous to make practicable their joinder as plaintiffs in a single proceeding. Accordingly, the Court rules that the numerosity requirement of Rule 23(a)(1) is satisfied.

With respect to the commonality requirement, it is recognized that if the allegations in the complaint are true, then certainly those Blacks presently employed by the Richmond Bureau of Police satisfy the prerequisite of 23(a)(2) and it follows that they have standing to assert their rights as a class in this action. The Court is further satisfied that the plaintiffs Cheagle and Jones qualify under Rule 23(a)(3) and (4) as proper representative parties of the class of people comprising present Black employees of the Richmond Bureau of Police in that these plaintiffs are Black police officers and as such they necessarily suffer the same harm as other Black police officers if there is merit to the plaintiffs' allegations. Accordingly, the Court holds that the general requisites necessary to the maintenance of a class action with respect to present Black employees have been met.

The final question for the Court to consider is whether or not the class as presently defined should be expanded to include all future employees and applicants for employment with the Richmond Bureau of Police. This group of persons, although designated with reasonable specificity, is necessarily vague and amorphous, because by definition, they don't yet exist. However, this Court is mindful that one of the purposes of the 1966 amendment to Rule 23, as stated by the Advisory Committee on the Federal Rules, was to enable the maintenance of a class action "where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." Notes of Advisory Committee, 39 F.R.D. 98, 102 (1966). Furthermore, it is recognized that the ultimate outcome of this litigation could affect or accrue to future employees or applicants. These factors, when viewed alongside the res judicata effect of all class actions brought under Rule 23(b)(2) and the public interest in judicial economy, persuade this Court that the group of persons comprising future applicants and employees with the Richmond Bureau of Police is properly included in the proposed class.

 This Court is aware that there is a growing body of authority holding that notice, as a matter of due process, is required in all representative actions if the resulting judgment is to be binding on absent class members. Despite the fact that Rule 23 only specifically requires notice in 23(b)(3) class actions,[6] cases have held that due process requires notice in actions brought under 23(b)(1) and 23(b)(2) also. Eisen v. Carlisle & Jacqueline, D. C., 52 F.R.D. 253 (1971). Accordingly, this Court holds that the due process requirements apply to this class action and the plaintiffs are directed to adopt a notice procedure which conforms to the requirements of due process and fairly insures the protection of absent parties who are to be bound by the litigation.

An appropriate order shall issue.

---

**6.** Although Rule 23(c)(2) technically applies only to 23(b)(3) class action, its requirements of "the best notice practicable under the circumstances" would seem to indicate not only the policy of the drafters vis-a-vis notice in (b)(1) and (b)(2) class actions, but also that which is required by procedural due process. Arey v. Providence Hospital, D.C., 55 F.R.D. 62, 71 (1972).

**159**

## ORDER

Upon consideration of defendants' motions to dismiss and to deny or limit the class action, the plaintiffs' memorandum in response thereto, and in accordance with the Court's memorandum filed this day, the Court, deeming it just and proper so to do, does hereby Adjudge and Order that:

Defendants' motion to dismiss the complaint with respect to the City of Richmond is hereby granted. Defendants' motion with respect to all other defendants is denied and the action shall continue as to them.

Defendants' motion to dismiss for lack of standing with respect to plaintiff Richmond Black Police Officers Association is hereby granted. Defendants' motion to dismiss is hereby denied with respect to plaintiffs Cheagle and Jones.

Defendants' motion to limit the class action is granted with respect to the groups of persons comprising "all Black persons residing in the City of Richmond entitled to police protection" and "all past Black employees and applicants for employment with the Richmond Bureau of Police," and said classes are excluded from this action.

Defendants' motion to dismiss the status of the suit as a class action is hereby denied and a class comprised of all present Black employees of the Richmond Bureau of Police and all future employees and applicants for employment with the Richmond Bureau of Police is constituted and the action may be maintained as to such class.

The plaintiffs are directed forthwith to propose a notice procedure for approval by the Court as contemplated in Rule 23(c)(2), Fed.R.Civ.P., to insure the protection of absent parties who are or may be bound by the litigation.

Let the Clerk send a copy of this order and the memorandum to all counsel of record.