HOWARD SECURITY SERVICES, INC., et al., Plaintiffs,

v.

The JOHNS HOPKINS HOSPITAL, Defendant.

Civ. A. No. J–79–1468.

United States District Court, D. Maryland.

June 8, 1981.

Norris C. Ramsey, Baltimore, Md., for plaintiffs.

Douglas D. Connah, Jr., Nell B. Strachan, Baltimore, Md., for defendant.

1. Plaintiff's name in the Complaint is Melvin L. Blanheim; other papers in the court file show his name as Melvin L. (Blanheim) Bilal. He is referred to herein by the name given in the Complaint.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Plaintiffs brought this action complaining of the failure of The Johns Hopkins Hospital (the Hospital) to award a contract for the provision of security services to Howard Security Services, Inc. (Howard). Plaintiff Blanheim,[1] a black, is president and apparently sole stockholder of Howard, a close corporation. The Hospital is alleged to have failed to award the contract to Howard because Blanheim is black. The specific counts are:

Count I—Howard's claim under 42 U.S.C. § 1981

Count II—Howard's claim under E.O. 11246

Count IV[2]—Blanheim's claim under 42 U.S.C. § 1981

Count V—Blanheim's claim under Title VI, 42 U.S.C. § 2000d and E.O. 11246.

The Hospital moved under F.R.Civ.P. 12(b)(6) to dismiss Counts I, II and V for failure to state a cause of action, as set out more fully below, and under F.R.Civ.P. 12(b)(6) and 12(e) to dismiss the entire Complaint for failure to state a claim upon which relief can be granted, or alternatively for a more definite statement. Plaintiff has filed a memorandum in opposition to the motion, and supplemental memoranda have also been exchanged. Upon review of the Complaint and the parties' memoranda, this Court has determined that oral argument on the motion is not necessary. *See* Local Rule 6.

### 1. *Motion to Dismiss Count I*

Defendant asserts that Count I should be dismissed because a corporation may not sue under 42 U.S.C. § 1981, the ultimate source of which is the Civil Rights Act of 1866, enacted to enforce the Thirteenth Amendment. As defendant notes, it is es-

2. No Count III appears in the Complaint.

tablished that a corporation has a cause of action under § 1983, e. g., *Advocates for the Arts v. Thomson*, 532 F.2d 792, 793 (1st Cir. 1976), because it is a "person" under the Fourteenth Amendment, *id.* There are some cases involving claims under both § 1981 and § 1983, in which corporate plaintiffs have, without discussion, apparently been permitted to proceed under § 1981. *Virginia Chapter, Associated Gen. Contractors of America Inc. v. Kreps*, 444 F.Supp. 1167, 1170–71 (W.D.Va.1978) (Rowland Electric Co. also a plaintiff); *Philadelphia Council of Neighborhood Ass'ns v. Coleman*, 437 F.Supp. 1341, 1368–69 (E.D.Pa.1977); *Guardians Ass'n of New York City Police Dept. v. Civil Serv. Comm'n*, 431 F.Supp. 526, 534 (S.D.N.Y.1977); *Black Brothers Combined of the City of Richmond, Inc. v. City of Richmond*, 386 F.Supp. 147 (E.D.Va. 1974). Plaintiffs in several of these cases were non-profit corporations, and it may have been assumed that the organizations could assert the claims of members. *Park View Heights Corp. v. City of Black Jack*, 467 F.2d 1208, 1214 (8th Cir. 1972) (corporate plaintiffs have standing to assert individual plaintiffs' statutory claims under §§ 1981, 1982). *But cf., Richmond Black Police Officers Ass'n v. City of Richmond*, 386 F.Supp. 151, 155 (E.D.Va.1974) (unincorporated association does not have standing based on members' claims).

This Court has found only two cases even approaching the question whether a corporation that is not an association or community group may assert a claim under § 1981, and neither is very helpful. The only case found that deals specifically with the question whether a corporation has a cause of action under § 1981 is *Central Presbyterian Church v. Black Liberation Front*, 303 F.Supp. 894 (E.D.Mo.1969). The district court held that a religious corporation, as well as its members, had an action under §§ 1981 and 1982. *Id.* at 901. The Court, however, characterized 42 U.S.C. §§ 1981–1985 as having been part of the Civil Rights

Act of 1866, implementing the newly passed Thirteenth and Fourteenth Amendments.[3] *Id.* at 898–99. In addition, the main question in the case was whether § 1981 protected whites, as well as blacks.

In a recent case a federal court had before it a claim under § 1981 by an ordinary business corporation. *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 506 F.Supp. 254 (D.P.R.1980). The court dismissed the case on the ground that there was no factual basis for a claim under § 1981. *Id.* at 258–59. The question whether a corporation could ever assert a claim under § 1981 was not before the district court. *See id.* at 256. In short, this Court's independent review confirms defendant's statement that no reported case has squarely addressed the issue whether a corporation is a "person" within the meaning of 42 U.S.C. § 1981.

Resolution of the question requires an examination of the legislative history of § 1981. Defendant argues that § 1981 implements the Thirteenth Amendment, which abolishes slavery, by proscribing the "badges and incidents" of slavery; logically, it can, therefore, apply only to natural persons.

What is now 42 U.S.C. § 1981 began as section 1 of the Civil Rights Act of 1866 and its purpose was implementation of the Thirteenth Amendment. The first section of the act declared that all persons born in the United States and not subject to a foreign power were citizens, without regard to race, color or previous condition of servitude; it then enumerated several rights that such citizens were to enjoy, along with white citizens. 14 Stat. 27. Section 2 of the act made deprivation of the rights secured a crime, *id.*, and sections 3–10 contained detailed enforcement provisions, *id.* at 27–29.

On May 31, 1870 the Forty-first Congress enacted the Enforcement Act, designed primarily to implement the Fifteenth Amendment. 16 Stat. 140. The Senate Judiciary

---

**3.** In 1866 the Fourteenth Amendment had been passed by Congress but not ratified, the Thirteenth Amendment had been passed and ratified. It is unclear whether the court is refer-

ring to passage by Congress or ratification by the states. The Civil Rights Act of 1866 is not the source of §§ 1983 and 1985.

Committee had reported out in February S.B.No.365, designed to extend to aliens most of the protections [4] afforded black citizens by the 1866 act.[5] Cong.Globe, 41st Cong., 2d Sess. S1536 (1870). Section 2 of the bill contained a provision similar to that in the 1866 act, imposing criminal penalties for violation. The final section provided that the 1866 act was reenacted and that its enforcement sections were incorporated into the 1870 legislation.

A bill to enforce the Fifteenth Amendment, a committee substitute for S.B.3480, was reported out of the Senate Judiciary Committee on May 16, 1870. Senator Stewart moved to amend that bill by incorporating into it the provisions of S.B.365 and another bill not relevant to this discussion.[6] *Id.* at S3480. The complete bill, as amended, was passed by the Senate on May 23, 1870, and eventually adopted by both houses.[7] The provisions relevant here were enacted as sections 16, 17 and 18 of the Enforcement Bill of 1870. 16 Stat. 144. The circumstances of their adoption have been set out in detail here, because they explain why debate on three pertinent sections of the 1870 act was not extensive. The primary concern of the Senate, as well as of the House upon consideration of the Senate version, was the merits of the voting provisions.[8]

The few remarks made indicate that § 16 of the 1870 act was intended to apply to aliens, that the 1866 act, through § 18, was intended to continue to apply to citizens,[9] and that the 1866 enforcement provisions would apply to both acts. More importantly, the Senators' remarks indicate that the Fourteenth Amendment was probably regarded as the source of congressional power to enact these provisions. In his brief introduction of the bill, Senator Stewart stated:

The original civil rights bill protected all persons born in the United States in the equal protection of our laws. It [S.B.365]

No tax or charge shall be imposed or enforced by any State upon any person immigrating thereto from a foreign country which is not equally imposed and enforced upon every person immigrating to such State from any other foreign country; and any law of any State in conflict with this provision is hereby declared null and void.
*Id.*

The problem that prompted the bill was the treatment of Chinese immigrants in California. *Id.* at S3658 (remarks of Sen. Stewart).

**4.** Deliberately omitted from the enumeration of rights secured to aliens were the rights to "inherit, purchase, lease, sell, hold, and convey real and personal property." Cong.Globe, 41st Cong., 2d Sess. S1536 (1870) (remarks of Sen. Stewart).

**5.** The 1866 act provided, in pertinent part:
[S]uch citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall have the same right, in every State and Territory in the United States, to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property, as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, and to none other, any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding.
14 Stat. 27.
Tracking that language, S.B. 365 provided: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory in the United States..." Cong. Globe, 41st Cong., 2d Sess. S1536 (1870). The rights set forth in the 1866 act were then enumerated, except for the rights concerning real and personal property. *Id.* The bill then further provided, in section 1:

**6.** S.B.1140.

**7.** The House had adopted a bill to enforce the Fifteenth Amendment dealing only with voting rights, but the Senate version was recommended by the conference committee and passed by both houses.

**8.** Indeed, after enactment of the bill, a few senators expressed surprise that these provisions unrelated to the Fifteenth Amendment had found their way into the version enacted. Cong.Globe, 41st Cong.Globe, 41st Cong., 2d Sess. S3701 (1870) (remarks of Sens. Casserly, Thurman).

**9.** The 1870 act would, by its terms, include citizens, but they were afforded greater protection. Senator Stewart's remarks indicate that there was no intention, in enacting § 16 of the 1870 legislation, to do away with those rights for citizens.

extends the operation of the civil rights bill, which is well known in the Senate and to the country, to all persons within the jurisdiction of the United States. That is all there is in the bill.

Cong.Globe, 41st Cong., 2d Sess. S1536 (1870) (remarks of Sen. Stewart). Later Stewart discussed the need to afford aliens equal protection of the laws. Responding to a criticism that the additional provision should not be added to the basic Fifteenth Amendment voting bill, he said:

> Why is not this bill a good place in which to put that provision? Why should we not put in this bill a measure to enforce both the fourteenth and fifteenth amendments at once? It will take no longer time in discussion. It will not delay the bill an hour. Does anybody doubt the necessity or the propriety of such a law? I think not. I want the Government to do this much. The fourteenth amendment to the Constitution says that no State shall deny to any person the equal protection of the laws. Your treaty says that they shall have the equal protection of the laws. Justice and humanity and common decency require it. I hope that provision will not be left off this bill, for there is not time to take it up as a separate measure, discuss it, and pass it at this session.

*Id.* at S3658 (remarks of Sen. Stewart). Other remarks also indicate that sections 16, 17 and 18 were thought to be ones implementing the Fourteenth Amendment. *Id.* at S3690 (remarks of Sen. Stewart); S3701 (remarks of Sens. Casserly, Thurman); S3870–08 (remarks of Sen. Stewart); H3871 (remarks of Rep. Bingham). Opponents sharply criticized the incorporation into what should have been a voting rights bill of the provisions to enforce the Fourteenth Amendment. *Id.* at H3873 (remarks of Rep. Kerr), H3874 (remarks of Rep. Beck).

The duplication of § 16 of the 1870 act, and the 1866 act was eliminated in the 1874 revision of the United States Code, the additional property rights of citizens being separately set out in what later became § 1982. *See Runyon v. McCrary,* 427 U.S. 160, 168 n. 8, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976) (discussing the implications of the revisors' notation of only § 16 as a predecessor to the 1874 revised version).

Review of the pertinent legislative history of the two predecessor statutes of § 1981 indicates that this section has roots in both the Thirteenth and the Fourteenth Amendments. *Cf. Detroit Police Officers' Ass'n v. Young,* 608 F.2d 671, 691–92 (6th Cir. 1979) (§ 1981 implements Thirteenth Amendment but also has close relationship to the Fourteenth Amendment). On the one hand, Congress was concerned in 1870 only with natural persons, aliens, and the bill here tracked the language of the 1866 act. Indications are, however, that the 1870 provisions, from which the present language of 42 U.S.C. § 1981 is derived, were conceived at the time as implementing the Fourteenth Amendment, at least together with the Thirteenth, if not the Fourteenth alone. The immediate problem leading to enactment of these sections was official actions, including taxation, taken against the Chinese by the State of California. It is not surprising that the Fourteenth Amendment should have been referred to, nor would it be contested that Congress had the power under the Fourteenth Amendment to enact legislation directed at the state action that was the immediate concern.

A problem is created when the admittedly brief legislative history is read with subsequent cases holding that a corporation has a cause of action under § 1983 as a "person" under the Fourteenth Amendment due process and equal protection clauses, and with cases dealing with the constitutional source of § 1981. Although a corporation may have rights under the Fourteenth Amendment, the application of § 1981 to purely private actions can probably be justified only under the Thirteenth Amendment, *see Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Defendant's argument that corporations cannot be subjected to slavery and cannot have races and thus cannot be covered by the Thirteenth Amendment and § 1981 has a good

deal of force. This case presents, however, a situation in which it is possible to decide that Howard may bring an action under § 1981 without necessarily deciding that the legislative history compels a finding that corporations always have such an action.[10]

Howard is a close corporation, apparently wholly owned by Blanheim and operated by him as owner. To deal with Howard is, practically speaking, to deal with Blanheim. Under these limited circumstances,[11] Howard has a cause of action under § 1981.[12]

### 2. Motion to Dismiss Count II

Count II is based solely on Executive Order 11246, and Count V is based on Title VI and the order. Defendant has moved to dismiss Count II, and Count V to the extent it relies on the order, on the ground that E.O. 11246 creates no private cause of action. This executive order, as amended, 42 U.S.C. § 2000e note, prohibits discrimination in employment by federal contractors and authorizes implementing regulations. Several courts have held that it creates no private right of action. *E. g., Cohen v. Illinois Institute of Technology*, 524 F.2d 818 (7th Cir. 1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976). Count II will be dismissed.

### 3. Motion to Dismiss Count V

Defendant moved to dismiss Count V on three grounds:

1. that no allegation has been made that plaintiffs were participants in or intended beneficiaries of a federally funded program,

2. that Title VI and E.O. 11246 created no private cause of action,

3. that plaintiffs failed to exhaust their administrative remedies before filing suit. Plaintiffs initially responded that although Title VI and E.O. 11246 did create private causes of action, "for the sake of judicial economy, they do not oppose the dismissal of those causes of action in that they are required to exhaust administrative remedies prior to pursuing their judicial remedies." Memorandum in Opposition to Defendant's Motion to Dismiss, p. 2. Thereafter, an administrative claim was filed, but, upon being notified that further documentation was required, plaintiff "elected to pursue his claim in this Honorable Court." Plaintiffs' Supplemental Memorandum, p. 2.

Although there may be a question whether Title VI confers a private cause of action, *see, e. g., Detroit Police Officers' Ass'n v. Young*, 608 F.2d 671, 691 n. 8 (6th Cir. 1979), only participants or beneficiaries of the federal program would have one. *See Joy v. Daniels*, 479 F.2d 1236, 1241 (4th Cir. 1973) (dictum). No allegation is made in the complaint that the provision of the security services would be funded, wholly or in part, by federal monies. Finally, it should be noted that even if the allegation that the Hospital is a federal contractor is sufficient for this purpose, plaintiff has not exhausted his administrative remedies. More than the perfunctory making of a claim with an administrative agency is required, and a dismissal by the agency for failure to provide further information for its use concerning the claim cannot be · a final agency action in any meaningful sense of the exhaustion doctrine. Count V will be dismissed.

### 4. Motion to Dismiss Complaint

Defendant has moved to dismiss the entire Complaint for failure to state a cause

---

**10.** The obvious implication of this Court's reading of the debates is that it is at least arguable (and probably, therefore, dismissal is inappropriate), that corporations have an action under § 1981. In most cases, an action under § 1983 is likely to cover the same facts; thus, there may be little practical significance of such a determination.

**11.** Defendant raises the problem how one would define a corporation as black. The statute is directed solely at racial discrimination,

not equal protection in a broader sense, as are the Fourteenth Amendment and § 1983. This is the clearest case for a "black" corporation— 100% owned by blacks and a close corporation.

**12.** Blanheim also asserted a personal claim under § 1981 in Count IV. Given the limited basis for finding that Howard has a cause of action under § 1981, the individual and corporate claims may well effectively merge.

of action or for a more definite statement, on the ground that it fails to give fair notice of the claim and the ground upon which it rests. Because of the rulings made in connection with Counts I, II and V, it is only necessary to consider this objection in connection with Count IV, the remaining count. The federal rules do not require that a complaint be very detailed, only that sufficient facts be stated to give notice of the claim. *E. g., Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Although defendant suggests that some courts have begun to view discrimination complaints more strictly, that is still the general standard.

The Complaint here goes beyond a mere statement that the Hospital has discriminated against plaintiff; it does identify the specific act or circumstance that he asserts was discriminatory. Whether the Hospital did award the security contract to another firm and not to Blanheim because of a discriminatory motivation, and whether plaintiffs will be able to support the claim are not the questions. Accordingly, to the extent that discovery in this case, which has been conducted by both parties, has not rendered this ground of objection moot, the motion to dismiss Count IV is denied.