**Jerry ROBINSON, Plaintiff-Appellant and Cross-Appellee,**

v.

**POUDRE VALLEY FEDERAL CREDIT UNION, William J. Smilie, individually and as agent for Poudre Valley Federal Credit Union, Defendants-Appellees and Cross-Appellants.**

**No. 80CA0741.**

Colorado Court of Appeals, Div. I.

Aug. 12, 1982.

Rehearing Denied Sept. 16, 1982.

Roy M. Wittstruck, Fort Collins, for plaintiff-appellant and cross-appellee.

Fischer & Wilmarth, Steven G. Francis, Fort Collins, for defendants-appellees and cross-appellants.

KELLY, Judge.

Plaintiff, Jerry Robinson, sued defendant, Poudre Valley Federal Credit Union (the Credit Union), to recover damages arising from non-delivery of an automobile financed through the Credit Union. The Credit Union counterclaimed for the balance due on the note. Robinson appeals the trial court's adverse decision on his claims, and the Credit Union cross-appeals the trial

court's disposition awarding it less than the balance due. We affirm in part, reverse in part, and remand for a determination of damages.

The trial court found the following facts: Robinson was a member of the Credit Union, from which he had previously obtained other loans. In March 1978, Robinson contacted defendant, William Smilie, the manager of the Credit Union, to request a loan for the purchase of a 1978 Subaru from a car dealership near Houston. The Credit Union issued a check in the amount of $4,600, payable jointly to Robinson and the dealership. The following words were stamped on the back of the check: "This check was issued by the maker for payment in full on the following described vehicle . . . and acceptance of this demand to deliver the title to Poudre Valley Credit Union . . . ."

Robinson and Smilie discussed the possible methods of transmitting the check to the dealer. Robinson testified as follows:

"Q. Did you have any discussions with Mr. Smilie as to the way the check was made out?

"A. Well, I looked at the check and saw that it was in both Tomball Motor Company's name and mine and asked if that was the safest way to proceed to protect his interests and mine in sending them a check like this.

"Q. What did—how did Mr. Smilie respond to that?

"A. Well, he indicated to me that there was an endorsement that they could place on the back of the check that would render the check non-cashable without accompanying title papers and that this special endorsement on the back was protection for myself and for them to prevent that from happening.

. . . . .

"Q. Did you have any further conversations regarding the endorsement?

"A. Well, yes, I did. I was unsure that this was the safest way to proceed and I questioned him again about is this really the best way to handle this matter and he again assured me that the endorsement on the back had been used for many years with no problems that had ever arisen out of it, that we were both protected by that endorsement.

"Q. Did he indicate again one way or the other whether the check could or could not be cashed without that endorsement?

"A. He never indicated to me in any way that the check could be cashed.

"Q. Did he affirmatively indicate otherwise?

"A. Yes, he did."

The check was signed by Robinson and forwarded to the dealership.

The evidence at trial indicates that an agent of the dealership cashed the check but failed to provide title documents to the Credit Union. Robinson telephoned the dealership weekly for six weeks and eventually was offered a car which cost $5,400 and did not conform to his specifications. He refused that car, and several weeks later, he learned that the dealership had gone out of business.

The trial court correctly concluded that the relationship between Robinson and the Credit Union was that of borrower and lender and that there existed no contract between them for services beyond that purpose. The court also concluded that the Credit Union acted negligently in advising Robinson without revealing its limited experience in transactions with out-of-state dealers and the potential dangers of the method of transmitting funds which had been chosen by Robinson. The court further concluded that Robinson was negligent in choosing the method of transferring funds, in proceeding despite doubts concerning the safety of the method, in failing to hire an attorney, and in failing to act in an appropriate fashion to protect himself. The court found Robinson to be 75% negligent and the Credit Union to be 25% negligent.

In *First National Bank v. Collins,* 44 Colo. App. 228, 616 P.2d 154 (1980), this court adopted the definition of negligent misrepresentation found in *Restatement (Second) of Torts* § 552(1), which states:

"One who, in the course of his business, . . . supplies false information for the guidance of others in their business trans-

actions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

The duty of care owed by the supplier of information is measured by the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect. *Restatement (Second) of Torts* § 552 comment a.

■ Contrary to the Credit Union's argument, there is sufficient evidence in the record to support the trial court's conclusion that the Credit Union acted negligently by failing to reveal its limited experience with out-of-state dealers and the potential dangers of the method of payment chosen by Robinson.

■ However, contributory negligence principles apply to the recipient of a negligent misrepresentation. *Restatement (Second) of Torts* § 552A. In Colorado, the comparative negligence principles set forth in § 13–21–111, C.R.S.1973, also apply to negligence which results in pecuniary loss. *Darnell Photographs, Inc. v. Great American Insurance Co.*, 33 Colo.App. 256, 519 P.2d 1225 (1974). Thus, Robinson can recover only if his negligence was "not as great as" the Credit Union's negligence. Section 13–21–111(1), C.R.S.1973.

The trial court found that Robinson was 75% negligent in that he "wanted to tie up the car and get the matter underway, had utilized legal services on other occasions but did not choose to do so, [proceeded] in spite of having doubts, and that he did not otherwise act in an appropriate fashion to protect himself." We disagree with the trial court's conclusion that a finding of negligence can be based in part upon the failure to employ an attorney for the purpose of purchasing a car.

There is no evidence in the record that Robinson had used legal services on other occasions, and if there were such evidence, it would be irrelevant. We cannot say, as a matter of law, that a reasonable person would have sought legal advice under these circumstances. Robinson's decision to rely on the advice of the manager of the Credit Union instead of hiring an attorney for what he believed to be a routine car purchase does not constitute negligence. In view of this conclusion, the cause must be remanded for a determination of whether Robinson was negligent, and if so, the percentage thereof, as well as a resolution of the damages issue.

The damages recoverable for a negligent misrepresentation include:

"(a) the difference between the value of what [the plaintiff] has received in the transaction and its purchase price or other value given for it; and

"(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." *Restatement (Second) of Torts* § 552B(1).

Here, the value given by Robinson was the debt he incurred in the amount of $4,600, and it is uncontroverted that he has paid $2,000 on this debt. Since the check for $4,600 was sent directly to the dealership and Robinson did not receive the car, he received no value whatsoever. Thus, Robinson's total damages include a $2,000 refund, cancellation of the remaining indebtedness, and the incidental damages claimed by him which are shown by the evidence.

If the trial court finds that Robinson was not negligent, he is entitled to the total amount of his damages. If the trial court finds that Robinson was less than 50% negligent, his total damages must be reduced by the percentage of his negligence. If the trial court concludes that Robinson was 50% negligent or more, judgment must be entered for the Credit Union.

However, the resolution of the Credit Union's counterclaim for the balance due on the note depends upon the trial court's determination of the relative negligence of the parties. At trial, the court accepted the following stipulation:

"[I]n the absence of Mr. Robinson prevailing on his claim [the loan] is payable according to its tenor and ... the note provides for a reasonable attorney fees in the amount of 15%, that amount is

"$390.00 and ... that amount is reasonable."

Thus, if Robinson does not prevail on his claim, *i.e.*, if his negligence is 50% or more, the stipulation will control the award of damages to the Credit Union, which includes $2,600, plus interest at the rate of 12% from March 28, 1978, as provided in the note, and attorney's fees of $390. The Credit Union would also be entitled to interest at the legal rate from the date of the judgment originally entered by the trial court.

The judgment is affirmed as to the conclusion that the Credit Union was negligent, but not as to the percentage thereof; the judgment is reversed as to the percentage of negligence attributable to Robinson, and is reversed as to the Credit Union's counterclaim. The cause is remanded for a redetermination of the percentage of Robinson's negligence, if any, and a redetermination of the damage and counterclaim issues.

ENOCH, C.J., and PIERCE, J., concur.