Daniel J. ROSALES and National Business Communications, Inc., Plaintiffs,

v.

AT & T INFORMATION SYSTEMS, INC., Defendant.

Civ. A. No. 88–C–1127.

United States District Court, D. Colorado.

Dec. 12, 1988.

Dirk W. de Roos and Elizabeth A. Mac-Donald, Kutak Rock & Campbell, and Gary B. Witt, AT & T Information Systems, Inc., Denver, Colo., for defendant.

Gary S. Cohen, Denver, Colo., for plaintiffs.

## ORDER

CARRIGAN, District Judge.

Plaintiff Daniel J. Rosales filed this action in the state district court for the City and County of Denver, Colorado, alleging a claim under 42 U.S.C. § 1981, together with various state law claims for relief. On July 19, 1988, the defendant AT & T Information Systems, Inc. ("AT & T") filed a verified petition for removal pursuant to 28 U.S.C. §§ 1441 and 1446. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331 and 1332.

On August 22, 1988, Rosales and an additional plaintiff, National Business Communications, Inc. ("National Business"), submitted an amended complaint. The amended complaint alleges the following facts: Rosales was employed by the defendant AT & T and its affiliated and predecessor companies, including Mountain States Telephone and Telegraph Company, from April 1970 to April 14, 1986. At some point during that time, Rosales decided to apply for an AT & T dealership. In late fall of 1985, and early 1986, Rosales had numerous conservations with "authorized agents and representatives" of AT & T concerning the award of an AT & T dealership to him. In reliance on those conversations, Rosales incorporated co-plaintiff National Business to serve as the legal entity that would obtain and hold his dealership. National Business then applied for an AT & T dealership.

The amended complaint further alleges that in February, March and early April of 1986, AT & T's authorized agents advised Rosales that National Business' application had been approved, albeit unofficially. On April 10, 1986, Rosales was informed "by AT & T's authorized agents and represent-

atives" that the only reason for the delay in official approval of the dealership application was Rosales' employment with AT & T. He was told that AT & T's legal staff was concerned about a potential conflict of interest arising out of Rosales' employment with AT & T. "In reliance upon the representations of Defendant AT & T's authorized agents and representatives, Plaintiff Rosales resigned from his employment at Defendant AT & T." (¶ 10) Subsequently, however, AT & T rejected National Business' dealership application.

The amended complaint contains nine claims for relief. The first claim alleges that AT & T violated both plaintiffs' rights under 42 U.S.C. § 1981 when it rejected National Business' application. Plaintiffs assert that the application was denied because Rosales is of Hispanic–Mexican–American descent and race.

The second claim asserts that AT & T breached its fiduciary duty owed to the plaintiffs, and that such breach constituted constructive fraud by AT & T upon the plaintiffs. The third claim asserts that AT & T, and its "authorized agents and representatives," knowingly or recklessly misrepresented material facts to Rosales. The fourth claim asserts that AT & T, and its "authorized agents and representatives," negligently misrepresented material facts to Rosales.

The fifth claim for relief asserts that AT & T breached an express covenant of good faith and fair dealing. The sixth claim alleges that AT & T breached an implied covenant of good faith and fair dealing. The seventh claim asserts that a contract was created between the plaintiffs and AT & T, and that AT & T breached the contract. The eighth claim alleges that a contract was created between Rosales and AT & T for the award of an AT & T dealership to National Business, that National Business was a third party beneficiary, and that AT & T breached the contract. The ninth claim alleges that AT & T is liable to both plaintiffs under a promissory estoppel theory.

Currently pending is the defendant's Motion to Dismiss Amended Complaint, Or in the Alternative, Motion to Strike and Motion for More Definite Statement. Defendant additionally requests an award of costs and attorneys' fees reasonably incurred in responding to the plaintiffs' claims. The parties have briefed the issues and oral argument would not materially assist my decision.

Although it propounds additional arguments, AT & T primarily contends that each of the asserted nine claims for relief must be dismissed either: (1) because it fails to comply with the pleading requirement set forth in Rule 8(a)(2), Fed.R.Civ.P.; (2) pursuant to Rule 12(b)(6), Fed.R.Civ.P., because it fails to state a claim upon which relief may be granted; or (3) under Rule 9(b), Fed.R.Civ.P., because it fails to plead fraud with requisite particularity. Alternatively, AT & T requests that the plaintiffs be required, pursuant to Rule 12(e), Fed.R. Civ.P., to provide a more definite statement of the facts alleged in the first, second, third, seventh, eighth and ninth claims.

In reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiffs have alleged no set of facts that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

To comply with Rule 8(a)(2), Fed.R. Civ.P., a pleading must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) requires that a claim for relief provide adequate notice to the defendant of the claim(s) against it sufficient to permit it to prepare a defense or response.

■ Under Rule 9(b), Fed.R.Civ.P., "[i]n all averments of fraud or mistake, the circumstances constituting the fraud shall be stated with particularity." To meet the Rule 9(b) standard a claimant must identify the circumstances constituting the fraud. *Saine v. A.I.A., Inc.,* 582 F.Supp. 1299,

1303 (D.Colo.1984). More specifically, a plaintiff must: (1) identify the particular individuals with whom he or she dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and half truths were expressed and how. *Id.* (*citing Noland v. Gurley*, 566 F.Supp. 210, 216 (D.Colo.1983); and *Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774 (D.Colo.1964)).

Rule 12(e), Fed.R.Civ.P., provides, in relevant part:

> "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired."

"In view of liberal discovery rules and procedures available to all parties, a motion for more definite statement is generally discouraged unless the pleading is so unintelligible that [the defendant does] not understand the allegation and [is] unable to respond." *Runyan v. United Brotherhood of Carpenters*, 566 F.Supp. 600, 608 (D.Colo.1983).

I now address the defendant's contentions as they relate to each of the plaintiffs' claims for relief.

### A. *First Claim—42 U.S.C. § 1981.*

The first claim for relief alleges that AT & T rejected National Business' dealership application because of Rosales' Hispanic/Mexican American descent and race, and in so doing violated National Business' and Rosales' rights under 42 U.S. C. § 1981.

Section 1981 provides:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

In *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Court held that § 1981 prohibits racial discrimination in the making and enforcement of private contracts. It must be noted, however, that the Court recently decided to reconsider *Runyon*. *Patterson v. McClean*, —— U.S. ——, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988). If *Runyon* is overruled then the plaintiffs will have no actionable claim under § 1981. Nevertheless, *Runyon* currently stands as the controlling authority and must be followed by lower courts.

#### 1. Standing.

AT & T contends that both plaintiffs' § 1981 claims must be dismissed on the ground that National Business and Rosales lack standing to assert their § 1981 claims against AT & T. In determining whether either plaintiff has standing under § 1981, I shall consider each plaintiff's claim separately.

##### (a). *Plaintiff National Business' Standing.*

AT & T argues that National Business' claim under § 1981 must be dismissed because "a corporation has no racial identity and cannot bring a claim in its own right under § 1981." (Motion, at 2.) In support, AT & T relies on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). There a non-profit corporation, Metropolitan Housing Development Corporation ("MHDC"), sought a rezoning permit from the Village of Arlington Heights, Illinois, in order to construct racially integrated low and moderate income housing. MHDC and three individuals seeking to represent a class of "low and moderate income minority-group members who work or desire to work in Arlington Heights at rents they can afford" filed an action seeking declaratory and injunctive relief under the Equal Protection Clause of the Fourteenth Amendment, and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*

The issue of MHDC's standing was not fully considered until the case was present-

ed to the Supreme Court. The Court concluded that MHDC met the constitutional standing requirements because it had shown an injury to itself "likely to be redressed by a favorable decision." 429 U.S. at 262, 97 S.Ct. at 561. The Court also stated that MHDC had standing to assert its right "to be free of arbitrary or irrational zoning actions." *Id.* at 263, 97 S.Ct. at 562. However, the Court acknowledged that "the heart of this litigation has never been [such a claim]. Instead it has been the claim that the Village's refusal to rezone discriminates against racial minorities in violation of the Fourteenth Amendment." *Id.* The Court then stated that "[a]s a corporation, MHDC has no racial identity and cannot be the direct target of the [Village's] alleged discrimination." *Id.* The Court observed that "[i]n the ordinary case, a party is denied standing to assert the rights of third persons." *Id.* Nevertheless, the Court did not reach the issue of whether MHDC could assert the constitutional rights of its prospective minority tenants. Instead, it concluded that at least one of the individual plaintiffs, a black who worked in Arlington Heights but lived twenty miles away, had standing to assert that the denial of the zoning permit violated his Fourteenth Amendment rights.

In contending that National Business lacks standing under § 1981, the defendant relies on the above quoted language from *Arlington Heights* that '[a]s a corporation, MHDC has no racial identity and cannot be the direct target of the [Village's] alleged discrimination." However, I conclude that besides being merely dictum, this language is inapplicable to the instant attempt by National Business to sue AT & T for the latter's alleged discrimination. I base this conclusion on the grounds (1) the minority racial identity exception to *Arlington Heights* appears applicable to this case; and (2) the quoted language from *Arlington Heights* is only relevant where, unlike here, the plaintiff-corporation asserts that it was the target of the alleged racial discrimination.

At least three post-*Arlington Heights* decisions by lower courts have permitted corporations to assert § 1981 claims where

the corporation, due to its ownership or management, had a minority racial identity. For example, in *Howard Security Services, Inc. · v. Johns Hopkins Hospital,* 516 F.Supp. 508, 513 (D.Md.1981), the court held that a corporation could assert a claim under § 1981 against a hospital for failure to award it a contract to provide security services because the corporation apparently was wholly owned by its black president, and the hospital allegedly failed to award the contract to the corporation because of the president's race. *See also T & S Service Associates, Inc. v. Crenson,* 666 F.2d 722, 725 (1st Cir.1981); *Organization of Minority Vendors, Inc. v. Illinois Central Gulf R.R.,* 579 F.Supp. 574, 588 (N.D.Ill. 1983).

Plaintiffs contend that the minority racial exception to the above-quoted language in *Arlington Heights* applies to this case because National Business has a minority racial identity derived from Rosales' Hispanic–Mexican–American descent and ethnicity. Defendant responds by contending that the minority racial identity exception to *Arlington Heights* is inapplicable here because the plaintiffs do not allege that National Business, at the time it submitted its dealership application to AT & T, was "minority-owned" or even that its principals were members of a racial minority.

As discussed *supra,* the allegations in a complaint must be liberally construed when resolving a motion to dismiss. I conclude that the amended complaint, liberally construed, indicates that the plaintiff National Business was owned by a minority person —Rosales—at the time the dealership application was submitted. *See, e.g.,* ¶ 6 ("Rosales incurred expenses and caused the incorporation of Plaintiff [National Business], which was to be the legal entity which would obtain the dealership"). Subject to Rule 11, Fed.R.Civ.P., the defendant may again raise the issue of National Business' racial identity in a motion for summary judgment.

Thus I conclude that the amended complaint alleges sufficient facts to enable the plaintiff National Business to withstand AT & T's motion to dismiss National Business'

§ 1981 claim for lack of standing. While my discussion of *Arlington Heights* could properly end here I consider it worthwhile to discuss briefly the second reason for my conclusion that the above-quoted language relied upon by AT & T is inapplicable here.

As mentioned, *Arlington Heights* involved an attempt by a non-profit corporation to assert the § 1981 rights of minority persons it represented. In the above-quoted dictum the Court essentially stated that the corporation lacked standing under § 1981 because it had no minority racial identity. As discussed above, if the corporation had had a minority racial identity, it might have had standing under § 1981.

■ What is more, however, the *Arlington Heights* limitation on § 1981 standing for a corporation should not be construed as applying to situations where a corporation alleges that it was injured because of its relationship with a person of minority racial identity. In other words, the *Arlington Heights* restriction on corporations asserting § 1981 claims is limited to the situation where the corporation alleges that it was the target of racially-motivated discrimination.

Courts have recognized that in some instances a § 1981 claim may be asserted by a plaintiff who alleges that it has been injured as a result of racially motivated discrimination directed against a third party. In these situations courts have ruled that even Anglos have standing to assert a claim under § 1981. For example, in both *Alizadeh v. Safeway Store, Inc.,* 802 F.2d 111 (5th Cir.1986), and *Faraca v. Clements,* 506 F.2d 956 (5th Cir.1975)., the Fifth Circuit determined that a white plaintiff could assert a § 1981 claim against a party who allegedly discriminated against that plaintiff because the plaintiff's spouse was a non-white.[1] In each case the actual racial prejudice was not directed against the plaintiff, but rather against someone with whom the plaintiff maintained a relationship. The plaintiff in each case was none-theless directly injured by the discrimination.

A similar result occurred in *Price v. Federal Express Corp.,* 660 F.Supp. 1388 (D.Colo.1987). There the plaintiff was a white employee who: (1) opposed his employer's discharge of a black employee on the grounds that it was discriminatory; and (2) assisted the black employee's attempt to obtain redress for the alleged discrimination. Claiming that he was transferred, harassed and constructively discharged in retaliation for his support of the black employee, the plaintiff sued his employer under § 1981 and other civil rights statutes. In denying the defendant's motion for summary judgment on the § 1981 claim, Judge Kane reasoned that "a white plaintiff may file a retaliatory claim under 42 U.S.C. § 1981 or § 1982 where the white plaintiff objects to what he or she believed to be racially discriminatory conduct to a non-white person." *Id.* at 1391. Although the instant case admittedly is different from *Price* because it does not involve a claim of retaliation, the decision nonetheless supports the position that a nonminority plaintiff can assert a claim under § 1981 if he has been injured by racial prejudice directed against a third party. *See Hudson Valley,* 671 F.2d 702, 708 (Pierce, J., concurring) (under the Fourteenth Amendment "and the statutes which seek to implement its purposes, *any person,* including a colorless corporate 'person,' although not a member of a protected group, has an implied cause of action against any other person who, with racially discriminatory intent, causes him (or it) direct injury") (emphasis in original).

■ It follows logically that if there are situations in which a white person may assert a claim under § 1981, there is no reason why in analogous situations a corporation, even one without a minority racial or ethnic identity, should not be allowed to assert a claim under § 1981. In effect, the Court's concern in *Arlington Heights* that a plaintiff-corporation does not have a ra-

---

1. In *Alizadeh* the white plaintiff claimed she had been discriminated against by her employer because her husband was Iranian. In *Faraca* the white plaintiff claimed that his employer discriminated against him because his wife was black.

cial identity is not relevant where the § 1981 plaintiff could be a white person. In determining whether a plaintiff has standing under § 1981, no rational basis justifies distinguishing between nonminority persons and racially "neutral" corporations.

On a superficial level, it may seem that this case is similar to *Arlington Heights* because the nonprofit corporation there ostensibly was injured by the alleged discrimination directed against the black persons it sought to represent. Thus AT & T might argue that National Business' claim, that it was injured by the racial prejudice directed against Rosales, does not distinguish this case from *Arlington Heights*. However, this case is different from *Arlington Heights* in two major respects. First, the plaintiff corporation here was not created to preserve the rights of other persons. Rather it was created under the applicable incorporation laws to exist as a legal entity with its own interests to represent, as well as the interests of its shareholders. Significantly, National Business alleges that *it's* own interests were directly injured by the racial discrimination because *it's* dealership application was rejected.

Second, whereas *Arlington Heights* involved a claim under the Fourteenth Amendment, the plaintiffs here allege a violation of § 1981. In *Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702 (2d Cir.1982), *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982), a nonprofit organization that produced theatrical and artistic productions predominantly for the benefit of blacks and Hispanics sued a county and its officials under 42 U.S.C. § 2000d, alleging that the defendants had discriminated by denying the plaintiff's application for funding under the Comprehensive Employment and Training Act of 1973 ("CETA"), 29 U.S.C. 801, *et seq.* The district court dismissed the complaint for lack of standing. The Second Circuit reversed, holding that the plaintiff did not lack standing because it: (1) met the constitutional test for standing; and (2) was in a better position than any other person to challenge the alleged discrimination.

The Second Circuit determined that *Arlington Heights'* limitation on a corporation's standing under § 1981 was inapplicable because the plaintiffs in *Arlington Heights* did not allege a claim for violation of a civil rights statute. Rather, the nonprofit corporation plaintiff there alleged a violation of its Fourteenth Amendment rights. In contrast, the organization in *Hudson Valley* alleged, in addition to other claims for relief, that its rights under 42 U.S.C. § 2000d had been violated. The court explained:

> "[Section] 2000d ... states that 'No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.' The statute does not say 'No person in the United States shall, on the ground of *his* race, color, or national origin' etc., and we perceive no reason to read it as if it did. *Arlington Heights* was scarcely meant to qualify the statement in *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), written by the same Justice, that in applying the prudential rules of standing, the question 'is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.' (Footnote omitted.) It is thus consistent with even a literal reading of the *Arlington Heights* opinion to hold that [the nonprofit corporation] has met all standing requirements with respect to its statutory claim." 671 F.Supp. at 705 (emphasis added).

This language from *Hudson Valley* is instructive for purposes of this case because the ground upon which the Second Circuit there distinguished *Arlington Heights* applies equally to the present action. Recovery under § 1981, like § 2000d, is not limited to plaintiffs who allege that racial prejudice was directed against them.

█ In sum, because a non-minority in certain situations has standing to assert a

claim under § 1981, it follows that in those situations a racially neutral corporation or organization may also assert a claim under § 1981. The dictum from *Arlington Heights* that a corporation "has no racial identity and cannot be the direct target of the [defendant's] alleged discrimination" is inapplicable. One of "those situations" occurs where the plaintiff alleges that it was directly injured as the result of racial prejudice directed against a person with whom it has a relationship. This was the essence of the white plaintiffs' claims in *Alizadeh, Faraca* and *Price;* and it is the essence of the plaintiff National Business' claim in the instant action. I therefore conclude that regardless of whether National Business has a minority racial identity, it has standing to assert a claim against AT & T under § 1981. Accordingly, AT & T's motion to dismiss National Business' § 1981 claim is denied.

### b. *Plaintiff Rosales' Standing.*

■ AT & T argues that Rosales' claim under § 1981 must also be dismissed because he has never personally applied for nor been denied an AT & T dealership. AT & T insists that under § 1981, a plaintiff may recover for violation of his *own* civil rights, not the rights of third parties. In support the defendant relies on *White v. Talboys,* 573 F.Supp. 49 (D.Colo.1983). There the court stated that "[p]laintiffs may only recover for deprivations of their own constitutional rights, not the rights of another." *Id.* at 51.

Defendant adds that shareholders and officers may not recover under the Civil Rights Acts for harm suffered by their corporation. To support this contention, AT & T cites *Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981); *Smith v. Martin,* 542 F.2d 688, 690 (6th Cir.1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977); and *Erlich v. Glasner,* 418 F.2d 226, 228 (9th Cir.1969). In *Gregory,* stockholders of a state chartered bank sued, among others, the Alabama Superintendent of Banks, the Federal Deposit Insurance Corporation and the United States. The district court granted summary judgment for the defendants and the plaintiffs

appealed. The Fifth Circuit affirmed. Among other grounds, it held that as stockholders, the plaintiffs were not the proper parties to press civil rights claims on behalf of the bank because " 'neither officers nor stockholders ... can maintain an action to redress an injury to the corporation even though the value of their stock is impaired as a result of the injury.' " 634 F.Supp. at 202 (*quoting* district court's decision).

After reviewing *Gregory* and the other cases cited by the defendant, I agree that Rosales cannot assert a claim under § 1981 against AT & T solely on the ground that he, as a National Business shareholder, was financially harmed by AT & T's alleged discrimination against National Business.

However, as a corollary to my conclusion, I must stress my earlier determination that National Business can assert a claim under § 1981. For purposes of ruling on the defendant's motion to dismiss, I have taken as true the amended complaint's allegation that National Business' application was rejected because of Rosales' race. According to the defendant, neither National Business nor Rosales has standing under § 1981 to seek relief from AT & T despite the fact that National Business' dealership application was allegedly rejected by AT & T solely because of Rosales' race. As long as *Runyon, supra,* is not overruled, either National Business or Rosales, if not both, can assert a claim against AT & T under § 1981. This court is unaware of any authority suggesting that a person who lawfully invokes the incorporation laws thereby forfeits his rights under § 1981.

Additionally, as discussed above, the plaintiffs assert that National Business has a minority racial identity. In *Howard, supra,* the court noted that where a corporation properly asserts a claim under § 1981 because its single shareholder is a minority, the corporation's and the shareholder's § 1981 claims effectively merge. 516 F.Supp. at 513, n. 12. Accordingly, if National Business has a racial identity based on Rosales' race then Rosales' § 1981 claim

**1498**

would effectively merge with National Business' § 1981 claim.

Defendant's motion to dismiss Rosales' § 1981 claim is denied at this time. However, the defendant may reassert its request for dismissal of Rosales' § 1981 claim in a motion for summary judgment if discovery indicates that National Business does not have a minority racial identity.

**B.** *Second Claim—Breach of Fiduciary Duty/Constructive Fraud.*

The second claim for relief alleges that AT & T owed a fiduciary duty to each plaintiff, and that the respective duties were breached. Plaintiffs contend that the respective breaches constituted constructive fraud.

AT & T contends that both plaintiffs' claims for breach of fiduciary duty must be dismissed because the allegations in the second claim do not satisfy the particularity requirements of Rule 9(b), Fed.R.Civ.P. AT & T additionally asserts that plaintiff Rosales' claim must be dismissed because under Colorado law a fiduciary relationship does not exist between an employer and its employee. I shall consider these two contentions in the order stated.

*1. Rule 9(b).*

■ "A breach of fiduciary duty constitutes constructive fraud." *Security Nat. Bank v. Peters, Writer & Christiansen, Inc.,* 39 Colo.App. 344, 569 P.2d 875, 880 (Colo.App.1987). Constructive fraud is defined as " 'a breach of duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive, violate confidence, or to injure public interests.' " *Id.* 569 P.2d at 880 (citation omitted). " 'Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.' " *Id.* at 881 (citation omitted). "Such fraud often arises where a special confidential or fiduciary relationship exists, which affords the power and means of one to take undue advantage over the other." *Id. See Rhoads v. Harvey Publications, Inc.,* 145 Ariz. 142, 700 P.2d 840 (1984) (constructive fraud, as contrasted to actual fraud, is a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the party charged,

the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interest); 37 C.J.S. *Fraud* § 2(2), at 213–14.

Plaintiffs respond to the defendant's argument that the second claim fails to satisfy Rule 9(b) by asserting that Rule 9(b) is inapplicable to claims for "constructive" fraud. Plaintiffs add that even if Rule 9(b) does apply, the second claim alleges sufficient facts to comply with the Rule.

Defendant has failed to cite any case or other authority to support its contention that Rule 9(b) applies to claims for constructive fraud. Indeed, the defendant does not even address the plaintiff's argument in its reply brief. In any event, after reviewing Rule 9(b) and the purpose behind it, I am persuaded by the plaintiffs' argument that it is inapplicable to the instant claim for constructive fraud.

*2. Employer–Employee Relationship.*

■ Defendant contends that Rosales cannot recover on its claim for breach of fiduciary duty because "[n]o Colorado court has ever recognized a fiduciary duty owed by an employer to its employee." (Memorandum, at 9.) In *Rhoads, supra,* the court observed that no previous Arizona case had involved a confidential relationship between an employer and its employee. However, the court added that "[w]e believe such a relationship could certainly be found if other facts were present." 700 P.2d at 847–48.

Plaintiffs contend that such "other facts" are present here. In support they cite *Dolton v. Capitol Federal Sav. & Loan Assoc.,* 642 P.2d 21 (Colo.App.1981). There the court acknowledged that "a fiduciary duty may arise from a business or confidential relationship which impels or induces one party 'to relax the care and vigilance it would and should have originally exercised in dealing with a stranger.' " *Id.* at 23 (citation omitted). The court added that "[a] confidential relationship arises when one party has justifiably reposed confidence in another." *Id.* (*citing Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979)).

One authority has observed:

"In the law of fraud, a confidential relation may exist between two persons regardless of whether or not the relation is technically fiduciary. It is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other; and it exists where two persons stand in such relation that, while it continues, confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other. It is said that the term 'confidential relation' covers every form of relation between parties wherein confidence is reposed by one in the other." 37 C.J. S. *Fraud* § 2, at 213.

The issue presented here is whether the amended complaint alleges that Rosales "justifiably reposed confidence" in his employer, AT & T. There is no allegation in the complaint to support this assertion. In their response brief, the plaintiffs argue that "whether a fiduciary duty was owed in the circumstances of this case" presents a factual issue that prevents dismissal of Rosales' claim. (Response, at 7.) Significantly, however, the response brief, like the amended complaint, does not cite any facts in support of the plaintiffs' assertion that Rosales justifiably reposed confidence in AT & T. Rosales cannot withstand scrutiny under Rule 12(b)(6) by simply alleging that a fiduciary duty existed between himself and his employer. Rather he must allege sufficient facts to support his claim that a fiduciary duty existed. Rosales has failed to do this. Accordingly his claim for breach of fiduciary duty must be dismissed, albeit without prejudice.[2]

### C. *Third Claim—Fraudulent Misrepresentation.*

■ In the third claim for relief, Rosales alleges that AT & T and its "authorized agents and representatives" falsely represented to him that his resignation from AT & T would remove the only ob-

stacle to the approval of the plaintiff National Business' dealership application.

AT & T contends that the third claim must be dismissed for failure to comply with Rule 9(b). AT & T specifically states:

"Rosales' Third Claim for Relief merely alleges that [the defendant] and certain unidentified 'agents and representatives' falsely misrepresented to Plaintiff that his resignation from [the defendant] would remove the only obstacle to approval of Plaintiff [National Business'] dealership application. (Amended Complaint ¶ 28). Rosales has failed to identify the individuals at [AT & T] with whom he dealt directly, designate the occasions on which the representations were purportedly made and reveal the content of the allegedly fraudulent statements." (Memorandum, at 11.)

A plaintiff asserting a claim for fraud must identify the particular individuals who allegedly dealt directly with him, and should describe the circumstances under which they dealt directly with him. *Trussell, supra,* 228 F.Supp. at 774.

Here the amended complaint does not identify the particular "authorized agents and representatives" of AT & T with whom Rosales dealt. Moreover, with one exception, it fails to designate the specific occasions on which the alleged misrepresentations were made. I therefore conclude that the third claim must be dismissed without prejudice for failure to satisfy Rule 9(b).

### D. *Fourth Claim—Negligent Misrepresentation.*

■ The fourth claim for relief alleges that AT & T is liable to Rosales for negligent misrepresentation because it, and its "authorized agents and representatives," negligently misrepresented to Rosales that his resignation from AT & T would remove the only obstacle to approval of National Business' dealership application.

AT & T contends that the fourth claim must be dismissed because the tort of negligent misrepresentation, as defined in *Re-*

---

**2.** Notably, AT & T does not argue in its motion or briefs that a fiduciary duty could not have existed between AT & T and the plaintiff National Business. I therefore decline to dismiss National Business' claim.

*statement (Second) of Torts* § 552 (which has been adopted in Colorado), is inapplicable to the facts of this case. Defendant also requests that Rosales' request for damages for lost profits and/or earnings, mental anguish and emotional distress, and for punitive damages, should be stricken with respect to the fourth claim for relief because "[i]n Colorado, it is well established that the proper measure of damages for negligent misrepresentation is limited to actual 'out of pocket' financial loss." (Motion, at 4.)

In *First Nat. Bank in Lamar v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980), the court adopted § 552 of the Restatement (Second) of Torts. That section sets forth the following elements necessary to state a claim for negligent misrepresentation:

"(1) One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2) ... the liability stated in subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it...."

Defendant argues that "[b]oth the Restatement and well-reasoned judicial interpretations of Section 552 limit liability for negligent misrepresentation to persons and entities engaged in the business of supplying information which their customers might rely upon in taking some additional action." (Memorandum, at 12.) In support, the defendant cites *National Union Fire Ins. v. Continental Illinois Corp.*, 654 F.Supp. 316 (N.D.Ill.1987), and other cases.

In *National Union* the court held that alleged misrepresentations by a bank holding company to its insurer would not support the insurer's claim for negligent misrepresentation against the holding company and its officials because under Illinois law such a claim could only be asserted against a defendant that was in the business of supplying information. The court relied on prior Illinois state courts decisions which had construed § 552 " 'to mean that the defendant must be in the business of supplying information.' " *Id.* at 318 (citation omitted).

Although *National Union* was decided under Illinois law, AT & T asserts that "Colorado decisions imposing liability for negligent misrepresentation have been limited to business transactions where the defendant is engaged in the business of supplying information." (Memorandum, at 13.) (*citing Fitzgerald v. Edelen*, 623 P.2d 418, 421 (Colo.App.1980); *Wolther v. Schaarschmidt*, 738 P.2d 25, 28 (Colo.App. 1986); and *Robinson v. Poudre Valley Federal Credit Union*, 654 P.2d 861 (Colo. App.1982). However, in none of cited cases did the court hold that a claim for negligent misrepresentation may only be asserted against a party in the business of supplying information.

Moreover, AT & T's argument conflicts with the result reached by the Colorado Court of Appeals in *Collins, supra.* There, Collins alleged that: (1) after reading a Western Auto magazine advertisement, he contacted Western Auto regarding the possibility of owning an associated store; (2) Western Auto supplied an agent to assist him in setting up the business; (3) the agent negligently made various incorrect statements to Collins regarding organization of the store, inventory to be carried, and projected profits; (4) Collins relied on the misrepresentations by becoming an owner of a Western Auto store; and (5) Collins was damaged as a result of the agent's misrepresentations. Viewing the allegations as true, the court concluded that Collins had sufficiently stated a claim for negligent misrepresentation. 616 P.2d at 156.

*Collins* is analogous to the present case. Plaintiff here, like the store owner in *Collins*, is a prospective purchaser of the use of a corporation's trade name. He alleges

that misrepresentations were made during negotiations over the sale. AT & T insists that it cannot be held liable for the tort of negligent misrepresentation because it was not in the business of supplying information to persons in Rosales' position; rather, it is in the business of selling information systems, i.e., merchandise. Notably, however, Western Auto, like AT & T, was not in the business of supplying information to persons' in Collins' position. Rather, like AT & T, it was the seller of merchandise. Thus the defendant's assertion that "Colorado decisions imposing liability for negligent misrepresentation have been limited to business transactions where the defendant is engaged in the business of supplying information," is simply erroneous.

Based on *Collins*, and taking as true the facts alleged in the amended complaint, I conclude that Rosales' claim for negligent misrepresentation should not be dismissed.

 Defendant contends that even if the claim for negligent misrepresentation is not dismissed, Rosales' recovery of damages on his negligent misrepresentation claim should be limited to his actual "out-of-pocket" loss. Defendant requests that "Rosales' claim for lost profits and/or wages and punitive damages as a result of alleged negligent misrepresentations" should be stricken from the complaint pursuant to Rule 12(f), Fed.R.Civ.P. (Memorandum, at 14–15.) Rule 12(f) authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

In support AT & T relies on *Robinson, supra,* 654 P.2d 861, 863. There the court applied the rule set forth in *Restatement (Second) of Torts* § 552B(1). That section provides:

"The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation."

Plaintiffs respond by asserting that the Colorado Court of Appeals has not in *Robinson,* or any other opinion, ever "limited the damages recoverable for negligent misrepresentation. Rather, in *Robinson,* all the Court did was state that Robinson's damages included his actual pecuniary losses." (Response, at 11.)

However the court in *Robinson* followed § 552B, whose Comment a. expressly states that "[t]he rule stated in this Section applies, as the measure of damages for negligent misrepresentation, the rule of *out-of-pocket* loss...." (Emphasis added.) Based on the express language of comment a, and the plaintiffs' failure to cite any case law or other authority that contradicts the plain meaning of comment a, I conclude that the plaintiff Rosales' recovery for negligent misrepresentation must be limited to his out-of-pocket loss. However, if prior to trial the plaintiff produces contrary binding or persuasive authority, this ruling will be reconsidered.

### E. *Fifth Claim—Breach of Express Covenant Of Good Faith and Fair Dealing.*

 The fifth claim for relief alleges that AT & T breached an express covenant of good faith and fair dealing it owed to the plaintiff Rosales, as its employee.

Defendant insists that the fifth claim must be dismissed because "[a]n employer's alleged promise to treat its employees 'fairly' is no more than a general statement of policy and does not give rise to enforceable 'contract' rights." (Motion, at 4.) In support, the defendant cites *Continental Airlines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987); *Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1085 (1984); and *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983).

Those cases are clearly inapplicable to the instant action. In none of them did the plaintiff assert a claim for breach of either an express or an implied covenant of good faith and fair dealing. Rather each case

involved a discharged terminable-at-will employee who argued that his employer's policy manual or guidebook modified the at-will nature of his job relationship.[3] At most the cases support the assertion that there is no implied covenant of good faith and fair dealing exception to the employment-at-will doctrine. That doctrine is not at issue here. These cases clearly do not hold that an express covenant of good faith and fair dealing can never be created by an employer's policy manual.

Moreover the defendant's contention is directly contradicted by Judge Kane's decision in *Price, supra,* 660 F.Supp. 1388. There an employer had represented in its employment manual and company newspaper that each employee was guaranteed fair treatment and equitable dealing. Judge Kane ruled that the representations created an express covenant of good faith and fair dealing. 660 F.Supp. at 1393.

Nevertheless, in the present action neither the amended complaint nor the plaintiffs' response brief alleges when or how the purported express covenant of good faith and fair dealing was stated. Paragraph 41 of the amended complaint merely alleges that "[d]efendant AT & T agreed with its employees, including Plaintiff Rosales, that it would treat and deal with them in good faith and fairly." I conclude that the fifth claim for relief fails to apprise the defendant adequately of the claim alleged by Rosales. Pursuant to Rule 12(e), Fed.R.Civ.P., the plaintiffs must state more definitely the facts supporting Rosales' claim for breach of an express covenant of good faith and fair dealing. Specifically, the plaintiffs must state when and in which document, conversation, or other communication the alleged covenant of good faith and fair dealing was expressed.

### F. Sixth Claim—Breach of Implied Covenant of Good Faith and Fair Dealing.

In the sixth claim for relief, Rosales alleges that AT & T, as his employer, breached an implied covenant of good faith and fair dealing.

AT & T argues that this claim must be dismissed because "[i]t is well established that Colorado courts do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context." (Memorandum, at 15) (*citing Farmer v. Central Bancorporation, Inc.,* 761 P.2d 220 (Colo.App.); *Pittman v. Larson Distributing Co.,* 724 P.2d 1379, 1385–86 (Colo.App.1986); and *Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1520 (D.Colo.1987). However, none of these cases holds that an implied covenant of good faith and fair dealing cannot arise in an employment context.

Indeed, an opposite result was reached in *Price, supra.* There the court determined that the employer's representation that each employee was guaranteed fair treatment and equitable dealing created an implied covenant of fair dealing, as well as an express covenant.

Furthermore, *Restatement (Second) of Contracts* § 205 (1981) provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." Section 205 has been adopted in Colorado. *Price,*

---

3. For example, in *Keenan* the plaintiff was an employee who had been hired for an indefinite term. He alleged that the employee manual had modified the at-will nature of his employment. Although AT & T cited *Keenan* in support of its request that the fifth claim be dismissed, it is interesting to note that the Colorado Supreme Court held there that an employee in the plaintiff's position "may be able to enforce the termination procedures in an employee manual...."

In *Thompson,* a terminable-at-will employee sued his employer alleging wrongful discharge. The employer's policy manual stated that terminations would be handled in a fair, just and equitable manner. The court ruled that this language did not support the plaintiff's claim that the language created an implied contract that the plaintiff would only be discharged for cause.

In *Pine River* the court confronted the issue of whether job security provisions in an employee handbook were enforceable despite the fact that the employment contract was of indefinite duration. The court stated that "[a]n employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer." 333 N.W.2d at 626.

at 1392; *see also Ruff v. Yuma County Transp. Co.*, 690 P.2d 1296, 1298 (Colo. App.1984).

However, as with the fifth claim for relief, the sixth claim must be stated more definitely. Rosales must allege sufficient facts to support his assertion that "his employment relationship with Defendant AT & T contained an implied covenant of good faith and fair dealing." (Amended complaint ¶ 6). At least the amended complaint must state in which document, conversation, communication or action of the defendant the alleged implied covenant of good faith and fair dealing occurred.

### G. *Seventh Claim—Breach of Contract.*

█ Plaintiffs' seventh claim for relief alleges that "a contract was created between Plaintiffs and Defendant AT & T for a dealership," and that AT & T breached the contract. (¶¶ 51, 52)

AT & T contends that this claim must be dismissed for failure to state a claim because "Rosales, who has never applied for, or been denied, an [AT & T] dealership," lacks standing to enforce an alleged dealership contract between AT & T and the plaintiff National Business. AT & T adds that "[w]here, as here, a corporation is allegedly harmed by some action of a third party, its right to seek redress for that wrong belongs to the corporation, not its shareholders." (Memorandum, at 17; *citing Shewmake v. Badger Oil Corp.*, 654 F.Supp. 1184, 1188 (D.Colo.1987); and *A.R. A. Mfg. Co. v. Cohen*, 654 P.2d 857, 860 (Colo.App.1982)).

In response, the plaintiffs contend:

"[AT & T] promised Rosales that it would award a dealership to [National Business] if he resigned his employment. Rosales did so, thereby creating a contract to which he was a party. Rosales has alleged damages personally on account of this breach of contract, including, *inter alia*, his loss of earnings from his continued employment for which he is entitled to recover." (Response, at 13.)

After liberally construing the allegations in the amended complaint, as I must in ruling on a motion to dismiss, I conclude

that it adequately alleges that a contract was created between Rosales and AT & T, and that the contract was breached by AT & T.

Defendant next asserts that the seventh claim should be dismissed pursuant to Rule 9(c), Fed.R.Civ.P. That Rule provides:

"In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

Defendant contends that the "[p]laintiffs' terse and conclusory breach of contract claim fails to allege the fulfillment of conditions precedent to the alleged contract and should therefore be dismissed under Rule 12(b)(6)." (Motion, at 5.) It argues that the amended complaint's allegations of breach of contract fail even to comply with Rule 8(a)(2), Fed.R.Civ.P.

Plaintiffs respond by contending that the Federal Rules of Civil Procedure do not require that a plaintiff suing for breach of contract allege that all of the contract's conditions precedent have been performed. In support, they cite *Runyan, supra*, 566 F.Supp. at 608. However, *Runyan* did not involve the issue of whether Rule 9(c) requires a plaintiff alleging a claim for breach of contract to plead the performance of all conditions precedent. Moreover, in *Redfield v. Continental Cas. Co.*, 818 F.2d 596, 610 (7th Cir.1987), the court stated that "pleading the performance of conditions precedent is necessary to state a cause of action for breach of contract."

Nevertheless, even if Rule 9(c) requires the claimant to plead the performance of conditions precedent in order to allege a claim for breach of contract, I conclude that the amended complaint satisfies this requirement by alleging that Rosales resigned from AT & T in order to ensure that National Business' application for an AT & T dealership would be accepted. No other condition precedent is apparent. *See Redfield, supra*, at 610 (a plaintiff need only "aver generally that all conditions prece-

**1504**

dent have been performed or have occurred").

Accordingly, the motion to dismiss the seventh claim for relief is denied.

■ Defendant requests pursuant to Rule 12(e), Fed.R.Civ.P., that if the seventh claim is not dismissed, the plaintiffs be required to submit a more definite statement of the claim. I conclude that the seventh claim for relief is not so unintelligible that the defendant cannot understand or respond to it. Discovery provides ample means of learning further details. Accordingly, the motion for a more definite statement is denied.

## H. *Eighth Claim—Breach of Contract (Third Party Beneficiary).*

■ The eighth claim alleges that "a contract was created between Plaintiff Rosales and Defendant AT & T for the award of a dealership to Plaintiff [National Business]," and that AT & T "breached said contract." (¶ 55–57)

AT & T argues that the eighth claim must be dismissed for failure to satisfy Rules 8(a) and 9(c), and for failure to state a claim upon which relief may be granted. AT & T alternatively requests that the plaintiffs be required "to state more definitely their breach of third party beneficiary contract claim, pursuant to Rule 12(e)." (Motion, at 6.)

AT & T advances the same argument with respect to the plaintiffs' eighth claim for relief as it does for the seventh claim; *i.e.,* that the claim does not satisfy the requirements of Rule 9(c), Fed.R.Civ.P., because it fails to allege the performance of conditions precedent. As with the seventh claim, I conclude that the requirement of alleging the performance of conditions precedent has been satisfied by the allegation that the plaintiff Rosales terminated his employment relationship with AT & T in order to facilitate National Business' obtaining an AT & T dealership.

I further conclude that the eighth claim for relief is not so unintelligible that the defendant cannot understand or respond to it. Motion practice should not be employed as a substitute for discovery. Accordingly, the motion for a more definite statement is denied.

## I. *Ninth Claim—Promissory Estoppel.*

■ In their ninth claim for relief, the plaintiffs allege that AT & T is liable to them under a theory of promissory estoppel.

In *Kiely v. St. Germain,* 670 P.2d 764, 767 (Colo.1983), the Colorado Supreme Court adopted "the principles articulated by" § 90(1) of the *Restatement (Second) of Contracts.* That section provides:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

"The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." *Kiely,* at 767. "Justifiable reliance on the representations of another is the gist of this action." *Id.* Fraudulent conduct by the promissor need not be demonstrated in order to recover under promissory estoppel. *Id.*

Defendant contends that Rosales' claim for promissory estoppel must be dismissed because it fails to allege the existence of a promise. I disagree. Liberally construed, the amended complaint alleges that AT & T promised Rosales that National Business' dealership application would be accepted if Rosales terminated his employment with AT & T. Accordingly, I conclude that Rosales' claim for promissory estoppel should not be dismissed.

Defendant next asserts that National Business' claim for promissory estoppel must be dismissed because it fails to allege that AT & T made any promise to National Business, or that National Business relied on any such promise.

In response, the plaintiffs contend that "contrary to [AT & T's] assertion, paragraph 7 of the Amended Complaint alleges reliance and action by [National Business] upon the promises given to Rosales by [AT & T]." (Response, at 14.) Plaintiffs add that "a promise directly to [National Business] or privity of contract are not required for a promissory estoppel claim." (*Id.*)

Plaintiffs support their argument by citing *Galie v. Ram Associates Management Services, Inc.,* 757 P.2d 176 (Colo.App. 1988). There the court stated that *Restatement (Second)* § 90(1) "recognizes that third persons, whom the promisor should reasonably expect to act as a result of the promise, may recover for a breach of that promise." *Id.* at 178. After reviewing *Galie,* I conclude that National Business' claim for promissory estoppel should not be dismissed.

 Defendant alternatively asks that the plaintiffs be required to state their ninth claim for relief more definitely because "the conclusory allegations of the Ninth Claim for Relief are so vague and indefinite that it cannot reasonably be required to respond to them." (Motion, at 6.)

I conclude that the ninth claim for relief is not so unintelligible that the defendant cannot understand or respond to it. Accordingly, the motion for a more definite statement is denied.

For the reasons stated above, IT IS ORDERED that:

(1) Defendant's Motion to Dismiss Amended Complaint is granted in part and denied in part;

(2) Plaintiff Rosales' claim for breach of fiduciary duty (second claim for relief) is dismissed without prejudice;

(3) The amended complaint's third claim for relief is dismissed without prejudice;

(4) Defendant's motion to strike is granted;

(5) The fourth claim for relief's request for damages for lost profits and/or earnings, mental anguish, emotional distress, and punitive damages, shall be stricken from the amended complaint;

(6) Defendant's motion for more definite statement is granted with respect to the fifth and sixth claims for relief;

(7) Defendant's request for attorneys' fees and costs is denied;

(8) Within 11 days from the date of this order the plaintiffs shall submit a second amended complaint that complies with this order, to the extent they may do so within Rule 11, Fed.R.Civ. P; and

(9) Within 22 days from the date of this order the defendant shall file an answer to the second amended complaint.